PEOPLE v LOWENSTEIN

Docket Nos. 56581, 58217. Submitted June 15, 1982, at Lansing.—
Decided July 23, 1982. Leave denied, 414 Mich 947.

Leonard Lowenstein was arrested, pursuant to an arrest warrant issued by a 46th District Court magistrate, for making a threatening telephone call. Lowenstein was later charged with carrying a concealed weapon after a pistol was found in his possession during arrest. All three 46th District Court judges disqualified themselves from hearing the cases against Lowenstein. The cases were then assigned to a 47th District Court judge, who dismissed the threatening phone call charge on the ground that the arrest warrant had not been issued by a neutral and detached magistrate. The prosecutor appealed to the Oakland Circuit Court. The court, Francis X. O'Brien, J., gave the prosecutor the option of having a different magistrate rewrite the arrest warrant or having the district court judge who dismissed the case set forth with specificity his reasons for determining the appearance of · impropriety. An order was issued directing the district court judge to supplement the

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 68 Am Jur 2d, Searches and Seizures § 71.
  Requirement under Federal Constitution, that person issuing warrant for arrest or search be neutral and detached magistrate—Supreme Court cases. 32 L Ed 2d 970.
[2, 3] 46 Am Jur 2d, Judges § 166 *et seq.*
  75 Am Jur 2d, Trial § 87.
[5] 46 Am Jur 2d, Judges §§ 98, 140 *et seq.*, 174, 175, 187.
  Interest of judge in an official or representative capacity, or relationship of judge to one who is a party in an official or representative capacity, as disqualification. 10 ALR2d 1307.
  Prior representation or activity as attorney or counsel as disqualifying judge. 72 ALR2d 443.
[6] 17 Am Jur 2d, Contempt § 84.
  46 Am Jur 2d, Judges §§ 174, 175.
[7] 46 Am Jur 2d, Judges § 109.
[8] 5 Am Jur 2d, Arrest § 100.
[9] 21A Am Jur 2d, Criminal Law § 853.
[10-13, 15] 21A Am Jur 2d, Criminal Law §§ 655 *et seq.*, 859 *et seq.*
[14] 21A Am Jur 2d, Criminal Law §§ 665, 865.

record by specifying his reasons for dismissal. Nearly one year later, the district court judge complied with the order, after which the circuit court affirmed the district court's dismissal order with prejudice. Shortly thereafter, the circuit court, Steven N. Andrews, J., dismissed the concealed weapon charge against defendant. The people appeal as of right the dismissal of the threatening phone call charge and by leave granted the dismissal of the concealed weapon charge. The appeals have been consolidated. *Held:*

1. The district court judge did not abuse his discretion by ruling that the magistrate was not neutral and detached. A sufficient appearance of impropriety existed that required the magistrate to recuse himself from issuing the arrest warrant. The dismissal of the concealed weapons charge is affirmed on the basis that the discovery of the pistol was the "fruit of the poisonous tree".

2. Defendant's right to a speedy trial on the threatening phone call charge has been abridged. The circuit court was correct in dismissing the charge with prejudice.

Affirmed.

1. ARREST — SEARCHES AND SEIZURES — WARRANTS — MAGISTRATES.

There is a two-part test for determining who may qualify as a magistrate with the power to issue search and arrest warrants: first, he or she must be neutral and detached; second, the magistrate must be capable of determining whether or not probable cause exists for the requested arrest.

2. JUDGES — DISQUALIFICATION OF JUDGES.

The record must show actual bias or prejudice before a conviction will be reversed on the ground that the trial judge should have disqualified himself, and for a judge to be disqualified for bias, the bias must be extrajudicial.

3. JUDGES — DISQUALIFICATION OF JUDGES.

The test for determining whether or not a trial judge should have disqualified himself because of bias or prejudice is not whether actual bias exists but whether there was such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused; furthermore, even though a judge personally believes himself to be unprejudiced, unbiased, and impartial, he should nevertheless certify his disqualification where there are circumstances of such a nature to cause doubt as to his partiality, bias, or prejudice.

4. ARREST — SEARCHES AND SEIZURES — MAGISTRATES.

An otherwise duly appointed magistrate who happens to be connected with law enforcement may not constitutionally issue search or arrest warrants.

5. JUDGES — DISQUALIFICATION OF JUDGES — MAGISTRATES.

A magistrate or judge must disqualify himself from presiding over a case if he has a pecuniary interest in the outcome, if one of the parties happens to be his client, or if a party happens to be a relative; furthermore, he must disqualify himself in a subsequent contempt trial where he was the victim of the contempt or where he became embroiled in a running controversy in the trial.

6. CONTEMPT — TRIAL.

A charge of contempt for misconduct during a trial is to be considered and heard before another judge in any case where the trial judge defers consideration of the charge until after the conclusion of the trial.

7. JUDGES — DISQUALIFICATION OF JUDGES.

A judge need not disqualify himself from presiding over a case merely because one of the parties sues him after the case has been filed.

8. ARREST — INVALID ARREST.

An invalid arrest does not invalidate all future judicial proceedings in a case.

9. CRIMINAL LAW — CONSTITUTIONAL LAW — SPEEDY TRIAL.

Michigan courts engage in a balancing test whenever a speedy trial issue is raised; the four factors that must be balanced are: (1) the length of the delay, (2) the reason for the delay, (3) whether or not the defendant asserted his right to a speedy trial, and (4) the prejudice defendant has suffered because the case has not gone to trial.

10. CRIMINAL LAW — CONSTITUTIONAL LAW — SPEEDY TRIAL.

A 6-month delay in bringing a criminal defendant to trial is necessary to trigger a further investigation into whether or not the defendant's constitutional right to a speedy trial has been violated; after a delay of 18 months, prejudice to the defendant is presumed and the burden of proof is shifted to the prosecutor to prove that defendant has not been prejudiced.

11. CRIMINAL LAW — CONSTITUTIONAL LAW — SPEEDY TRIAL.

Reasonable delays attributed to an appeal are not to be considered in determining whether a criminal defendant's right to a

speedy trial has been violated; excessive time on appeal, however, can violate the defendant's right to a speedy trial.

12. CRIMINAL LAW — CONSTITUTIONAL LAW — SPEEDY TRIAL.
    Delays in bringing a criminal defendant to trial which are attributed to court congestion are to be weighed against the prosecutor.

13. CRIMINAL LAW — CONSTITUTIONAL LAW — SPEEDY TRIAL.
    Unexplained delays in bringing a criminal defendant to trial, while normally given minimal weight, are to be weighed against the prosecutor.

14. CRIMINAL LAW — CONSTITUTIONAL LAW — SPEEDY TRIAL.
    Failure to assert the right to a speedy trial does not necessarily waive that right, but it does tend to offset the defendant's claim that his right to a speedy trial was violated.

15. CRIMINAL LAW — CONSTITUTIONAL LAW — SPEEDY TRIAL.
    The length of a delay in bringing a criminal defendant to trial is insufficient in and of itself to require dismissal of the case; however, an affirmative demonstration of prejudice is not necessary to prove a denial of the constitutional right to a speedy trial.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Richard H. Browne,* Assistant Prosecuting Attorney, for the people.

*Denenberg, Tuffley, Thorpe, Bocan & Patrick* (by *Robert F. Helfand* and *Susan Tukel),* for defendant.

Before: D. E. HOLBROOK, JR., P.J., and T. M. BURNS and J. E. MCDONALD,* JJ.

PER CURIAM. On January 12, 1979, defendant was charged with making a threatening phone call, MCL 750.540e(1)(a); MSA 28.808(5)(1)(a), and carrying a concealed weapon, MCL 750.227; MSA

---

* Circuit judge, sitting on the Court of Appeals by assignment.

28.424. The prosecution appeals by leave granted the January 21, 1981, dismissal of the threatening phone call charge. It appeals as of right the dismissal of the carrying a concealed weapon charge.

On January 12, 1979, the Southfield City Attorney swore out an arrest warrant before 46th District Court Magistrate Jeffrey Faintuck claiming that defendant had threatened him in a telephone call a few days earlier. Defendant was arrested later that day. He was also charged with carrying a concealed weapon after a pistol was found in his possession during arrest.

Over the next few weeks, all three 46th District Court judges disqualified themselves from hearing the cases against defendant. Subsequently, 47th District Court Judge Michael Hand was assigned to hear the cases. On February 8, 1979, Judge Hand orally indicated at the pretrial conference that he would dismiss the threatening telephone call charge because the arrest warrant had not been issued by a neutral and detached magistrate. On May 11, 1979, he dismissed the case.

The prosecutor then appealed to the circuit court. On January 4, 1980, the circuit court judge hearing the case gave the prosecutor the option of having a different magistrate rewrite the arrest warrant or having Judge Hand "set forth with specificity his reasons for determining the appearance of impropriety". Consequently, the circuit court judge issued an order directing Judge Hand to supplement the record by specifying his reasons for dismissal. He was given 30 days to comply with the order. This order was sent to the 46th Judicial District Court on February 1, 1980. However, despite prosecution letters sent to Judge Hand on April 4 and May 14, 1980, requesting compliance, he did not respond until January 5, 1981. Three

days earlier, the prosecutor had drafted and submitted a proposed supplementation of the order which Judge Hand eventually signed.

In the meantime, defendant (acting *in propria persona)* appealed the order of remand for supplementation of the record on September 19, 1980, to this Court. However, this Court denied the application on October 15, 1980. On October 31, 1980, defendant applied for rehearing. This application was denied on November 18, 1980.

On November 26, 1980, defendant filed a motion to dismiss. This motion was refiled by his newly appointed counsel on January 7, 1981.

On January 20, 1981, pursuant to a phone call from the circuit court, Judge Hand sent a letter to the circuit court listing his four reasons for dismissing the arrest warrant.

The reasons were:

"1. The magistrate Jeffrey Faintuck, while he was Assistant Prosecuting Attorney, had previously prosecuted the defendant on other charges.

"2. The magistrate, although the complaint and warrant was asserted to be on information and belief, was actually personally acquainted with the complaining witness and had been in an adverse position to him on previous occasions.

"3. That the magistrate Jeffrey Faintuck was the appointee of a three judge court where each of the three judges of that court had disqualified herself or himself because of pending litigation between the defendant herein, Leonard Lowenstein, and the judges and public figures of the City of Southfield.

"4. That the magistrate Jeffrey Faintuck had been the defendant in a suit brought by Mr. Lowenstein against Faintuck and others in the amount of ten million dollars, so in my opinion he was not a disinterested person."

The circuit court affirmed the dismissal order on January 21, 1981. Within two weeks, a different circuit court judge dismissed the concealed weapon charge.

The first issue on appeal is whether or not the magistrate was "neutral and detached". *Shadwick v City of Tampa,* 407 US 345, 350; 92 S Ct 2119, 2123; 32 L Ed 2d 783, 788 (1972), established a two-part test for determining who may qualify as a magistrate with the power to issue search and arrest warrants. First, he or she must be neutral and detached. Second, the magistrate must be capable of determining whether or not probable cause exists for the requested arrest.

The prosecution argues that *Shadwick's* test is met because the magistrate was in fact the proper party to issue the arrest warrant. True, it argues, he could be disqualified for bias but the bias must be actual and the four factors do not show actual bias. *People v Peques,* 104 Mich App 45, 46; 304 NW2d 482, 483 (1980): "The record must show actual bias or prejudice before a conviction will be reversed on the ground that the trial judge should ·have disqualified himself. *People v Elmore,* 92 Mich App 678; 285 NW2d 417 (1979) * * *."

For a judge to be disqualified for bias, the bias must be extrajudicial. *United States v Grinnell Corp,* 384 US 563; 86 S Ct 1698; 16 L Ed 2d 778 (1966). However, cases like *Peques* and *Elmore* do not deal with· the present situation. Instead, they deal with how much of an allowance our courts will make for a judge's inherent human failings. No human being (even a judge) is completely prejudice-free. But our judicial system requires judges. Therefore, we make allowances. Under normal circumstances, we will assume (absent evidence to the contrary) that the judge is free

enough from bias to make a tolerably nonpartisan decision. For example, a judge will occasionally preside over a case involving a defendant who had earlier pled guilty to the offense. Because this situation often enough arises and because the appearance of impropriety is not that high, we allow the trial judge to remain in charge of the case absent a showing of actual bias. *People v Rider,* 93 Mich App 383; 286 NW2d 881 (1979).[1] However, we realize that some situations are just too dangerous. Judges normally are not subjected to such special pressures and "under a realistic appraisal of psychological tendencies in human weakness"[2] we find that the appearance of justice requires the judge to disqualify himself. The test is not whether or not actual bias exists but also whether there was "such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused". *Ungar v Sarafite,* 376 US 575, 588; 84 S Ct 841; 11 L Ed 2d 921 (1964). In fact, "even though a judge personally believes himself to be unprejudiced, unbiased and impartial, he should nevertheless certify his disqualification where there are circumstances of such a nature to cause doubt as to his partiality, bias or prejudice". *Merritt v Hunter,* 575 P2d 623, 624 (Okla, 1978).[3] The right to a fair

---

[1] Of course, we draw a distinction between a judge as the trier of fact and as merely presiding over a jury trial. *Cf. People v Gibson (On Remand),* 90 Mich App 792; 282 NW2d 483 (1979), *lv den* 408 Mich 868 (1980), with *Kolowich v Ferguson,* 264 Mich 668; 250 NW 875 (1933). We also tolerate more the appearance of impropriety if the defendant waits until after his conviction to disqualify the judge. *People v Cocuzza,* 413 Mich 78; 318 NW2d 465 (1982).

[2] *Withrow v Larkin,* 421 US 35, 47; 95 S Ct 1456, 1464; 43 L Ed 2d 712, 724 (1975).

[3] See also *Withrow, supra,* 47; 95 S Ct 1456, 1464; 43 L Ed 2d 712, 723:

"[V]arious situations have been identified in which experience

tribunal is a right grounded in due process. *United States v Sciuto,* 531 F2d 842 (CA 7, 1976).

Certain situations have been identified as requiring dismissal when the appearance of impropriety is too great even though no actual prejudice is shown. First, "[a]n official associated in any way with the prosecution of alleged offenders, because of his allegiance to law enforcement, cannot be allowed to be placed in a position requiring the impartial judgment necessary to shield the citizen from unwarranted intrusions into his privacy". *State v Ruotolo,* 52 NJ 508, 512; 247 A2d 1, 3 (1968). In other words, an otherwise duly appointed magistrate who just happens to be connected with law enforcement may not constitutionally issue warrants. *Vance v North Carolina,* 432 F2d 984 (CA 4, 1970).[4] In fact, the Supreme Court unanimously reversed in *Lo-Ji Sales, Inc v New York,* 442 US 319; 99 S Ct 2319; 60 L Ed 2d 920 (1979), where the magistrate ("Town Justice") accompanied the police on the actual search pursuant to the search warrant and aided the police in

---

teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable. Among these cases are those in which the adjudicator has a pecuniary interest in the outcome and in which he has been the target of personal abuse or criticism from the party before him." (footnote omitted)

and *In re Murchison,* 349 US 133, 136; 75 S Ct 623; 99 L Ed 942, 946 (1955):

"Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way 'justice must satisfy the appearance of justice'."

[4] The prosecutor refers us to *State v Furry,* 31 Ohio App 2d 107; 286 NE2d 301 (1971), where the Court upheld a search warrant even though the magistrate was a prosecuting attorney in a territorially distinct jurisdiction and was a substantial part-owner in the premises to be searched. We do not believe that *Furry* accurately states the law.

determining what to seize. Even though the magistrate was duly authorized to issue the warrant and probable cause may have existed, the search was declared invalid because it had not been issued by a "neutral and detached" magistrate. See also *Thomason v State,* 148 Ga App 513; 251 SE2d 598 (1978).

Next, the magistrate (or judge) must disqualify himself if he had a pecuniary interest in the outcome. The United States Supreme Court unanimously reversed in *Connally v Georgia,* 429 US 245; 97 S Ct 546; 50 L Ed 2d 444 (1977), where the magistrate (justice of the peace) received $5 (his only salary) for each search warrant he issued but received no compensation when he turned down the request. A judge must also disqualify himself when one of the parties happens to be his client. *Armstrong v Ann Arbor,* 58 Mich App 359; 227 NW2d 343, *lv den* 394 Mich 783 (1975), *In re Zafiratos,* 259 Or 276; 486 P2d 550 (1971). He must also disqualify himself where a party happens to be a relative. *Barnes v Cooper,* 507 SW2d 157 (Ky, 1974).[5] Furthermore, he must disqualify himself in a subsequent contempt trial where he was the victim of the contempt. *Mayberry v Pennsylvania,* 400 US 455; 91 S Ct 499; 27 L Ed 2d 532 (1971). In fact, he must disqualify himself even if he was not the victim if he happened to have become embroiled in a running controversy in the trial. *Taylor v Hayes,* 418 US 488; 94 S Ct 2697; 41 L Ed 2d 897 (1974). In fact, Michigan requires a new judge any time that the trial judge defers consideration of a charge of contempt for misconduct during a trial until after a trial's conclusion. *People v Kurz,*

[5] However, in *People v Prast (On Rehearing),* 114 Mich App 469; 319 NW2d 627 (1982), we ruled that a Genesee County circuit judge need not recuse himself merely because one prosecution witness just happens to be a fellow judge's daughter.

35 Mich App 643; 192 NW2d 594 (1971), *lv den* 387 Mich 756 (1972).

With this background, we will examine the four factors. We agree with the prosecutor that the first factor is most likely insufficient in and of itself to sustain the dismissal. This Court ruled in *People v Potter,* 115 Mich App 125; 320 NW2d 313 (1982), that the presiding circuit court judge need not disqualify himself even though he had previously prosecuted the defendant. See also *People v Moran,* 36 Mich App 730; 194 NW2d 555 (1971). Such a situation requires actual prejudice. However, we will still consider this factor in conjunction with the other factors.

We agree with the prosecutor that factors 2 and 3 are not entitled to all that much weight. Factor 4, however, is a different matter:

"[N]ormally a judge should not sit on litigation involving a party who is a party to other litigation in which the judge himself is a litigant." *Smith v Smith,* 115 Ariz 299, 303; 564 P2d 1266, 1270 (1977).

Of course, this exhortation is tempered by the rule of necessity allowing the judge to sit where one of the parties has already sued virtually all members on the bench. *United States v Will,* 449 US 200, 213-216; 101 S Ct 471, 480-481; 66 L Ed 2d 392, 405-406 (1980), *Eismann v Miller,* 101 Idaho 692; 619 P2d 1145 (1980). But this rule does not apply to the present case. The prosecutor has never shown that no other magistrate was available to issue the arrest warrant.

The prosecutor argues that this factor should not be considered because defendant's suit had been frivolous and dismissed within a month. However, we believe that such an occurrence actually increases the appearance of impropriety.

The prosecutor also argues that considering this factor will allow a defendant to "judge shop" and force the judge off the bench merely by suing the judge. But one should distinguish between a suit brought after and one brought before the present one was filed. A judge need not disqualify himself merely because one of the parties subsequently sues him. *Ely Valley Mines, Inc v Lee,* 385 F2d 188 (CA 9, 1967).[6] However, defendant sued the magistrate before the warrant was issued. As such, the prosecutor's argument does not apply.[7]

We do not believe that the district court judge abused his discretion[8] by ruling that the magistrate was not neutral and detached. We believe that where the magistrate had previously prosecuted defendant and had been sued by defendant, a sufficient appearance of impropriety existed that required him to recuse himself from issuing the arrest warrant. Therefore, we affirm the concealed weapon charge's dismissal as the fruit of the poisonous tree. *Wong Sun v United States,* 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963).

The prosecutor next argues that the threatening telephone charge should be dismissed without prejudice. An invalid arrest does not invalidate all

---

[6] See also *Wilks v Israel,* 627 F2d 32 (CA 7, 1980), *cert den* 449 US 1086; 101 S Ct 874; 66 L Ed 2d 811 (1981), where the Court held that the judge need not disqualify himself where the defendant physically attacked him outside the jury's presence.

[7] Cases like *Olsen v Wainwright,* 565 F2d 906 (CA 5, 1978), *Rogers v Wilkins,* 275 SC 28; 267 SE2d 86 (1980), and *Chamberlain v State,* 453 SW2d 490 (Tex Crim App, 1970), have held that actual prejudice must be shown to require the judge to disqualify himself even though a party had sued him in an earlier lawsuit. Without deciding whether or not we agree, we note that in none of these cases had the judge also previously criminally prosecuted the party.

[8] We have used this standard only because the prosecutor has urged us to. We need not now decide if this standard rather than the clearly erroneous standard is apposite. Cf. *Sanders v State,* 151 Ga App 590; 260 SE2d 504 (1979), *cert den* 444 US 1047; 100 S Ct 737; 62 L Ed 2d 734 (1980).

future judicial proceedings. *People v Burrill,* 391 Mich 124; 214 NW2d 823 (1974). However, the trial judge had dismissed with prejudice having found that defendant's speedy trial rights had been violated.

Michigan courts engage in a balancing test whenever a speedy trial issue is raised. *People v Grimmett,* 388 Mich 590; 202 NW2d 278 (1972). The four factors that must be balanced are the length of the delay, the reason for the delay, whether or not defendant has asserted his right to a speedy trial, and the prejudice defendant has suffered because the case has not gone to trial. While 6 months is necessary to trigger a further investigation, a delay of 18 months or more shifts the burden to the prosecutor to prove that defendant has not been prejudiced. At that point, prejudice is presumed. *People v Den Uyl,* 320 Mich 477; 31 NW2d 699 (1948). The delay in the present case was 24-1/2 months before the circuit court judge dismissed the misdemeanor charge. Therefore, we start with the presumption that defendant has been prejudiced.

Reason for delay. Most of the delay occurred after the prosecutor appealed the case to the circuit court. Reasonable delays attributed to an appeal are not to be considered. *People v Chism,* 390 Mich 104; 211 NW2d 193 (1973). However, excessive time on appeal can violate a defendant's right to speedy trial. *Atkins v Michigan,* 644 F2d 543 (CA 6, 1981), *cert den* 452 US 964; 101 S Ct 3115; 69 L Ed 2d 975 (1981), *Day v United States,* 390 A2d 957 (DC App, 1978). The main reason for the delay in this case is the district court's failure to answer the supplementation order for a full year. Such a delay is to be held against the prosecutor: "A defendant has no duty to bring himself

to trial; the State has that duty * * *". *Barker v Wingo,* 407 US 514, 527; 92 S Ct 2182, 2190; 33 L Ed 2d 101, 115 (1972) (footnotes omitted). Delays attributed to court congestion are to be weighed against the prosecutor rather than against the defendant. *Strunk v United States,* 412 US 434, 436; 93 S Ct 2260, 2262; 37 L Ed 2d 56, 60 (1973).[9] Unexplained delays are to be weighed against the prosecutor. *People v Grandberry,* 102 Mich App 769; 302 NW2d 573 (1980). Under normal circumstances, this type of delay is to be given minimal weight. *People v Goode,* 106 Mich App 129; 308 NW2d 448 (1981). However, rather than continuing the appeal and thus delaying the trial date, the prosecutor could have abandoned the appeal at practically any time and had defendant rearrested. The prosecutor must take some blame for this delay. The year's delay on the supplementation order is especially unwarranted because defendant had already waited a full year to be brought to trial. See *Chism v Koehler,* 392 F Supp 659, 665 (WD Mich, 1975).

The prosecution also argues that defendant must be charged with the delay from September 19 through November 18, 1980, because of his appeal to this Court. We do not believe so. We do not see how that appeal necessarily froze everything below. The supplementation order could have been complied with or the appeal dismissed and defendant rearrested during that time.

*Assertion of right.* Failure to assert the right to a speedy trial does not necessarily waive that

---

[9] "The prophylactic effect of the clause as a protection of the innocent is substantially eroded if the fact of conviction in unimpaired trials removes from appellate consideration the interests of minimizing the consequences of incarceration and public accusation." Godbold, *Speedy Trial—Major Surgery for a National Ill,* 24 Ala L Rev 265, 285 (1972).

right. *Barker, supra, Grimmett, supra.* However, a defendant's claim that his right to a speedy trial was violated is heavily offset if he does not assert his right. *People v Harris,* 110 Mich App 636; 313 NW2d 354 (1981). In the present case, defendant never did file a motion requesting trial. However, he did file a few motions to dismiss. The first such motion was filed about two months before the case was actually dismissed. In *People v Wimbley,* 108 Mich App 527; 310 NW2d 449 (1981), this Court held that merely filing a motion to dismiss does not constitute an assertion of the right to speedy trial. However, we reject *Wimbley* based on *Chism, supra,* where the defendant had moved to dismiss about eight months after his arrest. He had moved to dismiss again twelve months later. Seven months later, the case came to trial. The Supreme Court concluded; "It must be recognized that defendant fulfilled his obligation to protect his right to speedy trial". 390 Mich 104, 114; 211 NW2d 193, 197. Although we find this issue close, we find that defendant in fact did assert his right to a speedy trial in the present case.

Prejudice. The length of delay is insufficient in and of itself to require dismissal. *People v Edwards,* 55 Mich App 256; 222 NW2d 203 (1974). However, "an affirmative demonstration of prejudice [is not] necessary to prove a denial of the constitutional right to a speedy trial". *Moore v Arizona,* 414 US 25, 26; 94 S Ct 188, 189; 38 L Ed 2d 183, 185 (1973). See also *People v Bennett,* 84 Mich App 408; 269 NW2d 618 (1978). The lack of prejudice is only one factor to be considered. *Moore, supra, Rice v Superior Court of Ventura County,* 49 Cal App 3d 200; 122 Cal Rptr 389 (1975), *Tullis v Superior Court of Los Angeles County,* 41 Cal App 3d 387; 115 Cal Rptr 177

(1974). In fact, "Greater specificity and harm must be shown where the other factors weigh in the state's favor, while a lesser showing will constitute sufficient prejudice when the other facts support a defendant's argument". *State v L'Heureux,* 166 Conn 312, 319; 348 A2d 578, 582 (1974).

About the only prejudice that defendant can assert in this case is his loss of memory over what he in fact did say over the telephone[10] and the anxiety that naturally occurs because the charges are pending against him for so long. Of course, this type of anxiety is normally unavoidable. *People v White,* 54 Mich App 342; 220 NW2d 789 (1974), *lv den* 397 Mich 805 (1976). However, we consider the overall balance to be very close. Where the case against the defendant is complex or involves numerous defendants, more delay is tolerated. *People v Missouri,* 100 Mich App 310; 299 NW2d 346 (1980). Of course, the converse requires that less delay is tolerated where the case is simple. In fact, this case is quite simple. It involves only defendant and is merely a misdemeanor. See *Beasley v Municipal Court for Bakersfield Judicial Dist of Kern County,* 32 Cal App 3d 1020; 108 Cal Rptr 637 (1973). A case cannot go on forever. In this case, defendant would have a very difficult time proving any more prejudice 20 years from now. Yet, we would not hesitate to dismiss the charges if the delay in the present case were 20 years. True, 24-1/2 months is not an exceptionally long period of time. However, if in fact we did remand this case to allow the prosecutor to rearrest defendant, he would most likely not come to trial until after four years after the original arrest. Although we believe that we have expeditiously handled this case, the delay has been

[10] See *Barker, supra,* 532; 92 S Ct 2182, 2193; 33 L Ed 2d 101, 118.

increased through this appeal. Balancing the factors, we find that defendant's right to a speedy trial has been abridged.

Affirmed.