*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF DETROIT,

UNPUBLISHED
March 10, 2026
Plaintiff-Appellee,     10:31 AM

V

No. 370068
Wayne Circuit Court
BRIAN SILVERSTEIN,     LC No. 23-002134-01-AR; 23-
002136-01-AR

Defendant-Appellant.

Before: MALDONADO, P.J., and M. J. KELLY and TREBILCOCK, JJ.

PER CURIAM.

On remand by our Supreme Court, *Detroit v Silverstein*, ___ Mich ___; 20 NW3d 542 (2025), defendant, Brian Silverstein, appeals as on leave granted the circuit court order reversing the district court's grant of defendant's motion to dismiss for violation of his right to a speedy trial. Because Silverstein's right to a speedy trial was not violated, we affirm.

## I. BASIC FACTS

Silverstein was arrested in July 2020 during a protest and charged with disorderly conduct, Detroit Ordinances, § 31-5-1, in August 2020. He moved to dismiss the case for failure to provide discovery in November 2020, but the court closed because of COVID-19 before the motion was heard. In February 2021, the case against Silverstein was dismissed on a motion by the City of Detroit (the City). The City filed two new charges against Silverstein based upon the same arrest in May 2021: interference with a government employee performing their duty, Detroit Ordinances, § 31-2-2, and loitering—impeding pedestrian or vehicular traffic, Detroit Ordinances, § 31-5-7.

The register of actions for the May 2021 charges reflects the following relevant events. Silverstein was arraigned on August 12, 2021. At a September 23, 2021 pretrial, he requested an adjournment and a jury trial in 2022. Silverstein requested another adjournment and reiterated his request for a jury trial at a March 29, 2022 pretrial. Silverstein's case was reassigned four times between March 29, 2022 and February 4, 2023. A final pretrial was scheduled for April 13, 2023. Approximately one week before the final pretrial hearing was to be held, Silverstein moved to dismiss for violation of his speedy-trial right.

-1-

The district court granted Silverstein's motion to dismiss, and Silverstein appealed to the circuit court. In the circuit court, Silverstein's case was consolidated with *Detroit v Simpson*, Court of Appeals Docket No. 369523. On appeal to the circuit court, Silverstein did not present his own argument; instead, he incorporated arguments contained in a brief submitted for *Detroit v Simpson*, and Simpson's lawyer appeared for Silverstein in the circuit court. The circuit court issued a written decision reversing the district court's order of dismissal and reinstating the charges.

Silverstein filed a delayed application for leave to appeal in this Court, which this Court denied. Silverstein then appealed to the Michigan Supreme Court, which entered an order remanding the case to this Court for consideration as on leave granted. See *Detroit v Silverstein*, ___ Mich ___; 20 NW3d 542 (2025).

## II. SPEEDY TRIAL

Issues of constitutional law, including whether a defendant was denied his right to a speedy trial, are reviewed de novo. *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006). We review the court's factual findings, however, for clear error. *Id*. "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Stone*, 269 Mich App 240, 242; 712 NW2d 165 (2005).

## B. ANALYSIS

The right to a speedy trial is guaranteed by the United States Constitution and the Michigan Constitution. US Const, Am VI; Const 1963, art 1, § 20. In *Barker v Wingo*, 407 US 514, 530; 92 S Ct 2182; 33 L Ed 2d 101 (1972), the United States Supreme Court identified four factors relevant to a speedy-trial claims: (1) length of delay, (2) reason for delay, (3) defendant's assertion of his right, and (4) prejudice to defendant. Michigan courts have adopted this balancing test. *People v Smith*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362114); slip op at 3 n 1.

## 1. LENGTH OF DELAY

The United States Supreme Court explained the length-of-delay factor is "to some extent a triggering mechanism." *Barker*, 407 US at 530. The particular circumstances of each case dictate what length of delay necessitates an inquiry into the other factors. *Id*. Prejudice is presumed after a delay of 18 months or more, and the burden shifts to the prosecution to prove a defendant was not prejudiced by the delay. *Williams*, 475 Mich at 262. The relevant time is measured from the date of the defendant's arrest. *Id*. at 261. Reasonable delays attributed to an appeal are not to be considered. *People v Chism*, 390 Mich 104, 113; 211 NW2d 193 (1973).

In this case, Silverstein was arrested in July 2020. In April 2023, his case was dismissed for violation of his speedy-trial right. Because delay attributed to appeals is excluded, the relevant time runs from Silverstein's arrest in July 2020 to April 2023. See *id*. Silverstein and the City agree the length of delay is approximately 33 months. Accordingly, prejudice is presumed, and the City carries the burden of proving Silverstein was not prejudiced by the delay, and we must consider the remaining *Barker* factors. See *Williams*, 475 Mich at 262.

## 2. REASON FOR DELAY

Different reasons for delay should be weighed differently. *Barker*, 407 US at 531. Delays for impairing the defense weigh heavily against the government, while "more neutral reason[s] such as negligence or overcrowded courts should be weighted less heavily." *Id*. Thus, "delays inherent in the court system, e.g., docket congestion, 'are technically attributable to the prosecution, [but] they are given a neutral tint and are assigned only minimal weight.' " *Williams*, 475 Mich at 263 (citations omitted). Valid circumstances may justify reasonable delays. *Barker*, 407 US at 531. This Court has held, for a speedy-trial claim, delays caused by COVID-19 are not attributable to the prosecution. *Smith*, ___ Mich App at ___; slip op at 1. Adjournments requested by the defense and granted can be attributed to the defense. *People v Cain*, 238 Mich App 95, 113; 605 NW2d 28 (1999). Delays between a dismissal of charges without prejudice and the reinstatement of charges "should not be attributed to either [the prosecution or the defense] because there [were] no charges pending against [the] defendant" during the period between the dismissal and the reinstatement of charges. *People v Wickham*, 200 Mich App 106, 111; 503 NW2d 701 (1993).

According to Silverstein, the circuit court identified three reasons for the delay: (1) defendant's adjournment requests, (2) COVID-19, and (3) court administration. We address each reason in turn.

First, Silverstein denies requesting adjournments on September 23, 2021 and March 29, 2022, despite clear notations in the register of actions indicating he did so. Notably, Silverstein did not make these arguments until his application for delayed leave to appeal to this Court. Regarding the September 23, 2021 pretrial, Silverstein asks this Court to rely on an e-mail exchange which says "Court set pretrial for 12-8-21 at 8:30. Jury trial degree of certainty in 2022. Nothing else on record" as proof of his claim he did not request an adjournment. That there is "[n]othing else on record" is hardly proof an adjournment was not requested off-record.

Regarding the March 29, 2022 adjournment, Silverstein wrote, "the transcript of the proceedings proves that the defense did not seek an adjournment" although his exhibit certifies there is no transcript of the proceedings on that date. He refers instead to the March 29, 2022 pretrial transcript for the *Simpson*, Docket No. 369523, matter. Reference to a transcript for a different defendant's case does not prove or disprove whether Silverstein requested an adjournment in his case.

Having reviewed the entirety of the record in Silverstein's case, we conclude that there is nothing to refute the entries in the register of actions stating that Silverstein requested two adjournments. Consequently, the circuit court did not clearly err in concluding defendant contributed to the delay by requesting two adjournments.

The second identified reason for delay was COVID-19 and its impact on the court system. In *Smith*, this Court summarized the measures taken by courts to safeguard public health:

> In March 2020, the Governor declared a state of emergency because of the onset of
> the pandemic. The Supreme Court, in response, issued Administrative Order No.
> 2020-1, effective March 15, 2020, and adopted emergency procedures in the state's

court facilities. See 505 Mich xcix. Effective March 18, 2020, the Supreme Court imposed limits on trial court proceedings, limiting access to courtrooms to no more than 10 persons. Administrative Order No. 2020-2, 505 Mich cii. Beginning April 23, 2020, the Supreme Court delayed all jury trials until June 22, 2020, or until further order of the Court. See Administrative Order No. 2020-10, 505 Mich cxxxix. [*Smith*, ___ Mich App at ___; slip op at 4.]

The *Smith* Court held "delays caused by the COVID-19 pandemic are not attributable to the prosecution for purposes of a speedy-trial claim. Unlike delays *inherent* in the court system which are attributable to the prosecution, delays resulting from emergency public-health measures during an unprecedented global pandemic are anything but." *Id*. at 5 (citation omitted). However, distinguishing delays "inherent in the court system" from delays "resulting from emergency public-health measures" is not a straightforward task. *Id*.

Here, the register of actions indicates that there was an adjournment on November 30, 2020 for "COVID closing." Moreover, the court took judicial notice of the impact of the pandemic on its operations, stating:

> And then I know even in our building, the Frank Murphy Hall of Justice, in September of 2020 two cases were tried in that month because the COVID numbers were going down and the health department allowed the Third Circuit Court to do two jury trials, one in one week and one in the next week. And I guess the Court is taking judicial notice of the havoc in moving cases in this time frame.

> \* \* \*

> The public health department allowed us to try two cases and then the numbers started going up again. And the numbers I used generically as the incidence of the people infected with the COVID virus. And from September until well—September of 2020 until well into 2021 there were no jury trials. The public was not allowed in this building. All of the proceedings took place by Zoom.

Additionally, on appeal, Silverstein acknowledges as "true" the fact that "jury trials were halted for much of 2020, and to some extent [were affected] in 2021."

Silverstein suggests that his case nevertheless "appeared to be relatively unaffected by the pandemic," and he asserts that the remaining portion of delay between April 2021 to April 2023 is unexplained and attributable to the City. Yet, his hearings were primarily held virtually, contradicting the suggestion his case was "relatively unaffected" by COVID-19. Further, his position ignores the backlog created by suspended and limited court operations throughout the pandemic. It would be inaccurate to suggest "delays caused by the COVID-19 pandemic" excludes all delays that accrued during closures and required resolution after court operations resumed. *Id*. The City pointed out "even when courts reopened, they faced significant backlogs and were not holding jury trials or doing so in a limited manner in 2022." Thus, assuming jury trials resumed without restriction on January 1, 2022, the record reflects that Silverstein's trial was scheduled 17

-4-

months after the district court resumed jury trials.[1]  At that point, the district court would have had a backlog from nearly two years of disrupted operations stemming from COVID-19 restrictions.

Moreover, Silverstein's case was reassigned four times between April 2022 and February 2023.  It is possible these reassignments were caused by pandemic-related court administration, but the record does not provide an explanation.  These unexplained reassignments may be "technically attributable to the prosecution" but should be "assigned only minimal weight." *Williams*, 475 Mich at 263 (citations and quotation marks omitted).  Accordingly, the 10 months between the first and last reassignment may be attributable to the prosecution and assigned only "minimal weight" if they were the result of court administration and not caused by COVID-19. *Id*.

In sum, the record reflects that Silverstein requested two adjournments.  The circuit court did not weigh them heavily.  Instead, the circuit court recounted details of COVID-19's impact on courts in Detroit and concluded much of the delay between Silverstein's arrest in July 2020 and dismissal in April 2023 was likely associated with COVID-19 and should not be attributed to the City.  *Smith*, ___ Mich App at ___; slip op at 5.  Although it is probable the backlog created by COVID-19 contributed in large part to the delays in 2022, after jury trials resumed, to the extent that the delays are attributable to the City, they are assigned little weight.  *Williams*, 475 Mich at 263.  Given the record, it was not clear error for the circuit court to conclude the reasons for delay were not fairly attributable to either party; instead, "the pandemic was a real and critical obstacle which prevented the parties' ability to have a trial any sooner."

### 3.  DEFENDANT'S ASSERTION OF HIS RIGHT

The defendant bears the burden of asserting his right to a speedy trial, and such an assertion is assigned "strong evidentiary weight."  *Barker*, 407 US at 531.  "We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id*. at 532.  Here, it is important to discern between asserting the right to a *jury* trial and asserting the right to a *speedy* trial.  In *Barker*, the United States Supreme Court distinguished the right to a speedy trial from other rights, including the right to demand a jury trial, in its discussion of waiver noting a "speedy trial is unique in its uncertainty because it is impossible to say exactly when and under what circumstances it must be asserted or may be deemed waived."  *Id*. at 529.  In contrast, the right to a jury trial "must be exercised or waived at a specific time or under clearly identifiable circumstances."  *Id*.  That a defendant's demand for *jury* trial is treated differently than a defendant's demand for a *speedy* trial indicates the two are distinct rights and asserting one does not necessarily invoke the other.

Silverstein claims his January 22, 2021 motion to dismiss sufficiently asserted his speedy trial right.  In support, he cites *People v Lowenstein*, 118 Mich App 475, 489; 325 NW2d 462 (1972).  In *Lowenstein*, 118 Mich App at 489, this Court declined to follow *People v Wimbley*, 108 Mich App 527; 310 NW2d 449 (1981), which held "merely filing a motion to dismiss does not constitute an assertion of the right to speedy trial."  This Court deviated from this holding based

---

[1] One of defendant's disputed requests for an adjournment occurred after this date, arguably reducing the delay attributable to the City.

on *Chism*, 390 Mich at 114, in which the defendant moved to dismiss for a speedy trial violation about eight months after his arrest and raised that issue several more times before trial. In *Lowenstein*, 118 Mich App at 479-480, the defendant filed an unspecified motion to dismiss about 11 months after his arrest. This Court opined the issue was "close" but found the defendant did assert his right. *Id*. at 489.

In this case, the circuit court emphasized defendant never moved for dismissal for lack of a speedy trial before April 6, 2023, about 32 months after his arrest and 20 months after the case was reinstated. Similarly, the record does not show defendant objected to the May 2023 trial date until April 2023. Defendant has not explained how an unspecified motion to dismiss made six months after his arrest relating to his disorderly conduct charge, which was dismissed, also functions as an assertion of his right to a speedy trial of the pending charges filed in May 2021.

Moreover, defendant claims the register of action entries reflect his assertion of the right to a *speedy* trial. It is true the register of actions shows defendant requested a *jury* trial on September 23, 2021 and on March 29, 2022. However, there is no evidence suggesting defendant explicitly asserted his right to a *speedy* trial on either date. In fact, there is no indication in the record that Silverstein asserted his right to a speedy trial until his April 6, 2023 motion to dismiss.

Despite noting that Silverstein waited until April 2023 to move for a speedy trial, the circuit court found this factor weighed in favor of Silverstein because he asserted his right to a jury trial. We conclude that the circuit court clearly erred when it found defendant's assertion of his right to a trial functioned as an assertion of his right to a *speedy* trial. Because an explicit request for a speedy trial was not made until just before trial, this factor weighs against Silverstein. See *Cain*, 238 Mich App at 111 ("A defendant must make a formal demand on the record to preserve a speedy trial issue for appeal.").

## 4. PREJUDICE

"[A] deprivation of the right to a speedy trial does not per se prejudice the accused's ability to defend himself." *Barker*, 407 US at 521. The right was designed "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id*. at 532. "[A]nxiety alone cannot establish a speedy-trial violation." *Smith*, ___ Mich App at ___; slip op at 6, citing *People v Gilmore*, 222 Mich App at 442, 462; 564 NW2d 158 (1997). Witness unavailability or memory loss may prejudice the defense, and "a reviewing court should look for examples about how the delay between arrest and trial harmed the defendant's ability to defend against the charges." *Smith*, ___ Mich App at ___; slip op at 6. "Prejudice to the defense is the more serious concern." *Williams*, 475 Mich at 264. Because prejudice is presumed in this case, the City has the burden of disproving prejudice. See *id*. at 262.

Silverstein, who was not incarcerated, claims personal prejudice because he experienced anxiety related to "the possible long-term implications of criminal charges and wrongful conviction." This issue was not discussed at the hearing, but was raised for the first time in Silverstein's application for delayed leave to appeal to this Court. However, anxiety, without more, is insufficient to establish a violation of his speedy-trial right, the circuit court did not err in finding he was not prejudiced. *Gilmore*, 222 Mich App at 462.

The City argues that Silverstein's case has not been impaired because no witnesses became unavailable and body-camera footage of his arrest was preserved and is available to refresh memories on both sides. The City points out that Silverstein only had one witness before its sixth witness was added, and he has not identified a specific witness who became unavailable.[2] Silverstein maintains the addition of a sixth witness by the City—another police officer—puts him at a disadvantage because he has only one witness to testify in his defense and because police testimony tends to be viewed as trustworthy. However, in *Barker*, 407 US at 521, the Supreme Court noted delay can benefit a defendant: "As the time between the commission of the crime and trial lengthens, witnesses may become unavailable or their memories may fade. If the witnesses support the prosecution, its case will be weakened, sometimes seriously so." Here, much like the memories of the defense witnesses, the memories of the City's witnesses may have faded. And, because there are six of them, there is a greater chance for inconsistencies in their testimony. Moreover, "[t]he number of witnesses which a party garners is quite irrelevant in determining where the truth lies." *People v Phillips*, 112 Mich App 98, 109-110; 315 NW2d 868 (1982).

In sum, the circuit court found no indication of witness unavailability or the loss or corruption of evidence. Given the record in this case, we conclude that finding was not clearly erroneous. As such, the City has met its burden to prove that no prejudice was caused by the delay in this case.

## III. CONCLUSION

Having considered the four *Barker* factors, we conclude that Simpson's right to a speedy trial was not violated. We, therefore, affirm the circuit court's order.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Christopher M. Trebilcock

---

[2] In *Smith*, the defendant conceded he could not "show with specificity that witnesses were not available to him due to the delay, or that any necessary documentation was lost in the intervening time period," and this Court found no prejudice to his defense. *Smith*, ___ Mich App at ___; slip op at 7.