*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

　　　　　Plaintiff-Appellee,

v

MELVIN CURTIS ERVING,

　　　　　Defendant-Appellant.

UNPUBLISHED
September 17, 2020

No. 347728
Wayne Circuit Court
LC No. 18-006625-01-FC

Before: RIORDAN, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b (multiple variables), and kidnapping, MCL 750.349. We affirm.

## I. BACKGROUND

On August 25, 2011, between 10:45 p.m. and 11:45 p.m., the victim was walking alone to a gas station near her home when a man driving a 2009 burgundy Impala stopped the victim and asked for directions. When the victim leaned towards the car, the man grabbed the victim's arm, "snatched" her into the front-passenger seat of his vehicle, locked the door, and drove away. The man held the victim down with one hand and stated, "I think you know what I'm about to do to you." When the victim looked in the man's direction, he punched the victim in the face and said, "Don't look at me."

The man drove to an isolated area and parked, then penetrated the victim vaginally, flipped her over, and penetrated her anally. The man did not use a condom and ejaculated. When the victim tried to look in the man's direction, he hit her. After the sexual assault, the man forced the victim to remove her clothing and kicked her out of his vehicle. The victim ran to a nearby building and cried for help. Employees at the building saw the victim, gave her a shirt, and called 911. One employee observed two vehicles "creeping" as if they were looking for someone, and one of the vehicles appeared to be a dark-colored four-door Impala.

The victim was taken to a hospital, where Julie Carol Groat, a sexual assault nurse examiner (SANE), administered an examination and collected evidence for a DNA rape kit. The victim told Groat that the man penetrated her vaginally and anally, and ejaculated near her anal-rectal area. The victim also told Groat that she had sex with her boyfriend within ninety-six hours of the sexual assault. Groat noted the victim had facial, neck, and anal pain, bruising on her right upper arm, and tearing in her anal canal, with active bleeding. Groat described the victim's demeanor as easily agitated and tearful, with outbursts of crying.

Detective Robert Kane with the Detroit Police Department's (DPD) Sex Crimes Unit spoke with the victim at the hospital the morning after the sexual assault. The victim described the perpetrator as a black male, around 39 to 40 years old, dark complexioned, with a round face, six feet in height, and with a medium build. The victim also told Detective Kane that the man drove a 2009 burgundy Impala.

The DNA rape kit that Groat collected was released to Detective Kane and received by Bode Technology in December 2011. A sperm fraction sample from the victim's labia majora contained the DNA of at least two individuals, with the victim's boyfriend's DNA being the major component. However, a sperm fraction sample from the victim's right interior thigh was consistent with a male contributor, but the victim's boyfriend was excluded. Eventually, the Michigan State Police (MSP) entered the DNA profile from the victim's right interior thigh into the Combined DNA Index System, which matched that DNA with defendant's DNA. Detective Regina Swift took defendant's buccal swab, and in September 2018, the MSP confirmed that defendant's buccal swab DNA extract matched the DNA profile from the victim's right thigh. When Detective Swift interviewed the victim, she was unable to identify defendant in a photographic array. At defendant's preliminary examination, however, the victim identified defendant as her assailant.

## II. TRIAL JUDGE'S RECUSAL

Defendant argues that the judge who presided over his trial appeared partial and biased, and therefore should have recused herself, because she prosecuted defendant in an unrelated 2012 criminal case. We disagree.

## A. STANDARD OF REVIEW

Generally, "[t]his Court reviews a trial court's factual findings on a motion for disqualification for an abuse of discretion, but the application of the law to the facts is reviewed de novo." *People v Wade*, 283 Mich App 462, 469; 771 NW2d 447 (2009). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013).

## B. ANALYSIS

"The right to a fair tribunal is a right grounded in due process." *People v Lowenstein*, 118 Mich App 475, 482-483; 325 NW2d 462 (1982). The party asserting that a judge is biased must overcome the heavy presumption of judicial impartiality. *Wade*, 283 Mich App at 470. In general, MCR 2.003 governs when disqualification of a judge is warranted. Defendant's argument for recusal—that the trial judge appeared biased based on her prior prosecution of defendant—is addressed in MCR 2.003(C)(1)(b), which states that disqualification is warranted when:

(b) The judge, based on objective and reasonable perceptions, has either (i) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v Massey*, [556 US 868]; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), or (ii*) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct. [MCR 2.003(C)(1)(b).]

Defendant does not contend that the trial judge failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct. Instead, defendant argues that the trial judge should have recused herself because a reasonable and objective person could perceive a serious risk of actual bias implicating due process based on the trial judge's previous prosecution of defendant. Yet defendant's assertion is broad, and he does not relate it to the facts of this case. That is, he appears to assert that it is a per se rule that if a trial judge previously prosecuted a defendant for a separate crime, then recusal is required.

Defendant cites no authority for such an assertion, persuasive or otherwise, and we believe that such a per se rule is neither necessary nor warranted. A prosecutor's role is to seek justice, not merely convict defendants. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Yet prosecutors are people, and *Caperton*, 556 US at 883, requires "a realistic appraisal of psychological tendencies and human weakness." Thus, we recognize that it is possible for a prosecutor-turned-judge to harbor ill-will towards a defendant that was acquitted in a separate criminal case that the judge prosecuted. On the other hand, it seems equally (if not more) likely that a prosecutor-turned-judge could view a defendant's acquittal on a separate case that the judge prosecuted as justice being served. See *Dobek*, 274 Mich App at 63. We therefore conclude that the mere fact that a trial judge previously prosecuted a defendant for a separate crime does not, standing alone, require recusal.[1] Rather, there must be some fact beyond the trial judge's previous prosecution of a defendant for a separate crime to give rise to an objective perception of a serious risk of actual bias. Because the trial judge's previous prosecution of defendant is not by itself sufficient to require the judge to recuse herself, and defendant does not point to any additional facts about the previous prosecution that may suggest a serious risk of actual bias, defendant has failed to overcome the heavy presumption of judicial impartiality.[2]

---

[1] Other jurisdictions have held similarly. See, e.g., *Brown v State*, 2012 Ark 399, 5 (2012) ("Likewise, the mere fact that a judge previously prosecuted a defendant for a separate crime is not by itself grounds for recusal."); *In re Disqualification of Selvaggio*, 153 Ohio St 3d 1201 (2017) ("Judge Selvaggio's disqualification is not required merely because he previously prosecuted this defendant in a separate matter."); *People v Sloley*, 179 AD3d 1308, 1312 (2020) ("Defendant also argues that a conflict of interest was created because the judge presiding over his trial previously served as the District Attorney when he was prosecuted on an unrelated matter. Such fact by itself, however, does not require a judge's recusal.").

[2] We offer no opinion about whether a trial judge's previous prosecution of a defendant falls under MCR 2.003(C)(1)(e), which requires disqualification if "[t]he judge was a partner of a party, attorney for a party, or a member of a law firm representing a party within the preceding two years." But we note that even if that rule applied, the trial judge prosecuted defendant in the separate matter six years before trial in this case began.

## III. UNAVAILABLE WITNESS

### A. MRE 804(A)(5)

Defendant next argues that the trial court erred in determining that the victim was unavailable as a witness under MRE 804(a)(5) because the prosecution made insufficient efforts to locate and produce the victim at trial. We disagree.

### 1. STANDARD OF REVIEW

We review a trial court's decision whether a witness is unavailable for an abuse of discretion. *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Duncan*, 494 Mich at 722-723.

### 2. ANALYSIS

The victim was declared unavailable under MRE 804(a)(5), which states:

> (a) Definition of Unavailability. "Unavailability as a witness" includes situations in which the declarant--

> * * *

> (5) is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance (or in the case of a hearsay exception under subdivision (b)(2), (3), or (4), the declarant's attendance or testimony) by process or other reasonable means, and in a criminal case, due diligence is shown.

"The test for whether a witness is 'unavailable' as envisioned by MRE 804(a)(5) is that the prosecution must have made a diligent good-faith effort in its attempt to locate a witness for trial." *Bean*, 457 Mich at 684. "The test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it." *Id*.

Defendant contends the prosecution failed to show that reasonable, good-faith efforts were made to locate the victim. Defendant's argument is unavailing.

The prosecution personally served the victim with a subpoena for her appearance at trial. On the first day of trial, the prosecution sent a Lyft vehicle to the victim's home and transported the victim to court. The victim was not called to testify but waited in the witness room with the victim advocate and Detective Swift. On the second day of trial, the prosecution again sent a Lyft vehicle to the victim's home, and the victim sent a text message to the victim advocate stating that she was on her way to court. However, for unknown reasons, the victim failed to appear.

The prosecution thereafter attempted to locate and procure the victim's presence by: (1) calling the victim's cellular telephone on multiple occasions; (2) sending detectives to the victim's home, both in the morning and in the afternoon, and to another location where the victim often

stayed; (3) contacting the victim's brother; and (4) contacting the Wayne County Jail. Despite these efforts, the prosecution was unable to locate the victim. The prosecution did not request a witness detainer at the end of the second day of trial.

When the victim failed to appear on the third day of trial, however, the prosecution did request a witness detainer. The prosecution explained that after the second day of trial, it sent detectives to the victim's home and checked the hospitals, jails, and morgue, but was unable to locate the victim. The prosecution represented that neither the victim's brother nor boyfriend had been able to contact the victim, and that the victim's family was concerned.

On the fourth day of trial, the victim again failed to appear. The prosecution stated that it again had detectives search for the victim at multiple addresses, and contacted the victim's brother, boyfriend, hospitals, jails, morgue, and the DPD, but was still unable to locate the victim. It was at that time that the prosecution requested that the victim be declared unavailable under MRE 804b and that her testimony from defendant's preliminary examination be read into the record.

The trial court did not err by finding the prosecution exercised due diligence in its effort to locate the victim and secure her presence for trial. The prosecution subpoenaed the witness and secured her presence for the first day of trial. The prosecution attempted to do the same on the second day of trial, but the victim failed to appear for unknown reasons. The prosecution then spent the next two days using the resources reasonably available to it to locate the victim—it sent detectives to the victim's home and places that she was known to stay, it contacted members of the victim's family and others close to the victim that may have known her whereabouts, and it checked various places that the victim could be where she may be unable to contact others (hospitals, jails, and the morgue). Defendant faults the prosecution for not requesting a witness detainer on the second day of trial, and while defendant is correct that the prosecution could have done so, our review is of the prosecution's actual efforts to secure the victim's presence, "not whether more stringent efforts would have produced it." *Id*. Based on the prosecution's efforts to obtain the victim's presence outlined above, we conclude that the prosecution made a diligent good-faith effort to locate a victim for trial.

## B. MRE 804(B)(1)

Defendant also argues that he did not have an opportunity and similar motive to develop the victim's testimony at the preliminary examination through cross-examination, so admission of the victim's former testimony under MRE 804(b)(1) was improper. Defendant further contends that he was denied his constitutional right to confrontation because the trial court permitted a reading of the victim's preliminary examination testimony to the jury at trial. We disagree.

### 1. STANDARD OF REVIEW

We review for an abuse of discretion a trial court's evidentiary ruling, such as a decision to admit testimony under MRE 804(b)(1). *People v Farquharson*, 274 Mich App 268, 271; 731 NW2d 797 (2007). "However, decisions regarding the admission of evidence frequently involve preliminary questions of law, e.g., whether a rule of evidence or statute precludes admissibility of the evidence." *Id*. (quotation marks and citation omitted). Questions of law are reviewed de novo.

*Id.* Likewise, whether defendant's Sixth Amendment right of confrontation was violated is reviewed de novo. *People v Fackelman*, 489 Mich 515, 524; 802 NW2d 552, 557 (2011).

## 2. ANALYSIS

" 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is inadmissible unless otherwise provided in the Rules of Evidence. MRE 802. MRE 804(b) provides several hearsay exceptions when a declarant is "unavailable" for one of the reasons provided in MRE 804(a). As relevant to this case, MRE 804(b)(1) states:

> (b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

> (1) Former Testimony. Testimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Thus, former testimony is admissible as an exception to hearsay so long as the witness is unavailable and was subject to cross-examination during the prior testimony. If these requirements are met, the Confrontation Clause does not bar the former testimony. *People v Garland*, 286 Mich App 1, 7; 777 NW2d 732 (2009) ("Former testimony is admissible at trial under both MRE 804(b)(1) and the Confrontation Clause as long as the witness is unavailable for trial and was subject to cross-examination during the prior testimony.").

There is no dispute that the victim's testimony given at defendant's preliminary examination constitutes testimony given "at another hearing of the same or a different proceeding . . . " MRE 804(b)(1). See *People v Garay*, 320 Mich App 29, 37; 903 NW2d 883 (2017), overruled in part on other grounds *People v Skinner*, 502 Mich 89; 917 NW2d 292 (2018). Defendant argues on appeal, however, that he did not have a similar motive to cross-examine the victim at defendant's preliminary examination. This Court has given a list of non-exhaustive factors to consider when evaluating whether a party had a similar motive to develop the former testimony as required in MRE 804(b)(1):

> (1) whether the party opposing the testimony had at a prior proceeding an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue; (2) the nature of the two proceedings—both what is at stake and the applicable burden of proof; and (3) whether the party opposing the testimony in fact undertook to cross-examine the witness (both the employed and available but forgone opportunities). [*Farquharson*, 274 Mich App at 278 (quotation marks omitted).]

With regard to the first factor, defendant argues that he did not have an interest of substantially similar intensity to disprove whether defendant kidnapped and sexually assaulted the victim by force at the preliminary examination, as he did at trial. Defendant contends that the preliminary examination was not a proceeding where the truth of the matter was able to be

examined. We disagree. The purpose of a preliminary examination is "to determine if a crime has been committed and, if so, if there is probable cause to believe the defendant committed it." *People v Johnson*, 427 Mich 98, 104; 398 NW2d 219 (1986) (quotation marks and citation omitted). The prosecution's purpose in presenting the victim's testimony at defendant's preliminary examination was to establish a reasonable belief that defendant was guilty of sexually assaulting the victim during the commission of the felony of kidnapping. The prosecution read the victim's testimony at defendant's trial for the same reason—to establish that defendant kidnapped the victim and penetrated the victim during the kidnapping. Therefore, defendant had an interest of substantially similar intensity in proving or disproving the victim's testimony. See *Garay*, 320 Mich App at 37-38 (holding that, at a preliminary examination hearing, the defendant had "an interest of substantially similar intensity in proving or disproving" the testimony of two witnesses as he did at his trial because the prosecution presented the witnesses at the preliminary examination testimony to submit the same evidence that it used the witnesses to submit at trial) (quotation marks omitted).

For the second factor, defendant argues that because the applicable burden of proof at the preliminary examination was lower than it was at trial, see *People v Yost*, 468 Mich 122, 126; 659 NW2d 604 (2003), he approached his line of questioning differently and, thus, did not have a similar motive to develop the victim's testimony at the preliminary examination as he would at trial. This argument ignores that the same issues were at stake in both proceedings, and that, even though the burden of proof was lower, defendant had a similar motive in each proceeding to disprove the victim's testimony. See *Garay*, 320 Mich App at 38 ("Additionally, although the burden of proof was lower at the preliminary examination, defendant had a similar motive to cross-examine N and T at both proceedings—defendant was motivated to show that their testimony regarding what they saw and heard from their porch lacked credibility or was not accurate.") (Citations omitted.)

As for the third factor, defendant concedes that he cross-examined the victim at his preliminary examination. Though he concedes this point, defendant argues that he should still not be considered to have had the "opportunity" to cross-examine the victim as required by both MRE 804(b)(1) and the Confrontation Clause. Clearly, however, defendant had the opportunity to cross-examine the victim as required under MRE 804(b)(1). See, e.g., *People v Meredith*, 459 Mich 62, 67; 586 NW2d 538 (1998) (holding that the defendant, who chose not to cross-examine a witness at the preliminary examination, had the "opportunity" to do so). Indeed, defendant took advantage of his opportunity and cross-examined the victim. Turning to defendant's related-Confrontation Clause argument, "the Confrontation Clause guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Kentucky v Stincer*, 482 US 730, 739; 107 S Ct 2658; 96 L Ed 2d 631 (1987) (quotation marks and citation omitted). Again, defendant clearly had the *opportunity* for effective cross-examination of the victim at defendant's preliminary examination, so the Confrontation Clause is satisfied. See *Meredith*, 459 Mich 62 at 71 ("Again, the fact that MRE 804(b)(1) is a firmly rooted exception means that, for present purposes, the prior testimony of the courier bears satisfactory indicia of reliability. The Confrontation Clause is satisfied, and the testimony is admissible.").

In sum, (1) the trial court properly concluded that the victim's testimony from defendant's preliminary examination was admissible at defendant's trial under MRE 804(b)(1) and (2) the

admission of the testimony did not violate defendant's right to confrontation because defendant had the opportunity to cross-examine the victim at his preliminary examination.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he was denied the effective assistance of counsel because (1) defense counsel allegedly advised defendant that, if he testified, his prior convictions could be used for impeachment purposes even though defendant's criminal history does not involve acts or convictions that satisfy the threshold for impeachment, and (2) defense counsel failed to investigate and call exculpatory witnesses to testify that in 2011, defendant's appearance and vehicle differed from the victim's description. Defendant's arguments do not warrant relief.

### A. STANDARD OF REVIEW

"Generally, an ineffective assistance of counsel claim presents a mixed question of fact and constitutional law." *People v Hoang*, 328 Mich App 45, 63; 935 NW2d 396 (2019) (quotation marks and citation omitted). "Constitutional questions are reviewed de novo, while findings of fact are reviewed for clear error." *Id*.

### B. ANALYSIS

To prevail on an ineffective assistance claim, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Dendel*, 481 Mich 114, 125; 748 NW2d 859 (2008). "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012) (quotation marks and citation omitted). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (quotation marks and citation omitted).

Defendant argues that if defense counsel had not given him legally incorrect advice, he would have testified and explained (1) the presence of his DNA on the victim's thigh and (2) that, in 2011, he did not resemble the assailant that the victim described nor did he drive a car resembling the one the victim described. Yet even assuming that defense counsel gave defendant legally incorrect advice and that this constituted deficient performance, there is not a reasonable probability that defendant's testimony would have affected the outcome of the proceedings.

First, defense counsel already presented to the jury defendant's theory about why his DNA was found on the victim's thigh. Defense counsel argued to the jury that the victim was a prostitute, that defendant engaged in consensual sex with the victim in exchange for money, and the victim was brutally raped by someone else after defendant left. The jury apparently rejected this theory and convicted defendant. Defendant does not explain why his testimony repeating his theory to the jury would have led to a different outcome.

Second, the evidence that defendant did not drive an Impala in 2011 was already before the jury. During defense counsel's cross-examination of Detective Swift at trial, Detective Swift stated that her investigation revealed that neither defendant nor anyone in his family ever owned an Impala.

As for defendant's final argument—that he could have testified that, in 2011, he did not resemble the assailant that the victim described—defendant does not establish a reasonable probability that the outcome would have been different had this testimony been offered. Defendant's argument centers on the fact that the victim testified that her assailant had a beard, and defendant contends that he did not have a beard in 2011. While defendant is correct that the victim testified that her assailant had a beard, she testified that it was "smaller" than the one defendant had at the time she was testifying. Moreover, Detective Swift testified that the victim described her assailant as "a black male around 39 to 40 years old, dark complected, six foot in height, medium build" with "a round face," and defendant does not explain how his appearance in 2011 did not meet this description. Most importantly, the victim identified defendant as her assailant at her preliminary examination, and this identification was supported by the finding of defendant's DNA in a sperm fraction sample taken from the victim's right interior thigh. In light of (1) the fact that the victim's identification of defendant was supported by DNA found in a sperm sample taken from the victim's thigh and (2) the fact that defendant matched the description of the victim's assailant that the victim gave to Detective Swift, there is not a reasonable probability that the jury would have discredited the victim's identification of defendant as her assailant if defendant testified that he did not have a beard when the victim was assaulted in 2011.

Defendant's argument that defense counsel was ineffective for not calling additional witnesses fails for similar reasons. Defendant argues that if defense counsel would have called defendant's mother, she could have testified that in 2011, defendant did not drive a burgundy Impala, and that his appearance in 2011 differed from that reported by the victim because he had a shaved face in 2011. But, again, defense counsel elicited from Detective Swift that defendant did not drive an Impala in 2011. And for the reasons already explained, defendant fails to establish that there is not a reasonable probability that, had the jury been told that defendant had a shaved face in 2011, the results of the proceedings would have been different.

In sum, defendant's argument that defense counsel at trial was ineffective does not warrant appellate relief.

## V. CONCLUSION

Affirmed.

/s/ Michael J. Riordan
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle

-9-