PEOPLE v LOCKLEAR

Docket No. 104145. Submitted May 12, 1988, at Detroit. Decided June 5, 1989.

Gloria Jean Locklear was charged with possession with intent to deliver less than fifty grams of a mixture containing cocaine. Defendant moved to suppress the evidence on the ground that the search warrant was not signed by a magistrate. At the preliminary examination the examining magistrate was the magistrate who heard the testimony on the search warrant. He stated that he didn't know why his signature did not appear on the warrant since he specifically remembered signing it. He proceeded to sign it nunc pro tunc and refused to quash the information and suppress the evidence. Defendant appealed and the Macomb Circuit Court, George R. Deneweth, J., affirmed. Defendant appealed.

The Court of Appeals *held:*

A search and seizure made pursuant to a warrant which was inadvertently unsigned under circumstances requiring a warrant is unconstitutional.

Reversed and remanded.

W. F. LaVoy, J., dissented. He would hold that, where an impartial magistrate examines the affidavit, approves it and intends to issue the warrant and, in fact, signs the warrant, but his signature does not appear on the warrant due to a technical problem, the warrant is valid. He would remand for a hearing to determine whether the examining magistrate intended to issue the search warrant after finding there was probable cause.

1. SEARCHES AND SEIZURES — WARRANTS — UNSIGNED WARRANTS.

A search and seizure made pursuant to a warrant which was inadvertently unsigned under circumstances requiring a warrant is unconstitutional.

2. SEARCHES AND SEIZURES — WARRANTS — ISSUANCE.

A warrant "issues" when a magistrate signs an appropriate document and turns it over to the proper person.

REFERENCES

Am Jur 2d, Searches and Seizures §§ 60, 71-73.

See the Index to Annotations under Search and Seizure.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Carl J. Marlinga,* Prosecuting Attorney, *Robert G. Berlin,* Chief Appellate Lawyer, and *Stanley W. Woodruff,* Assistant Prosecuting Attorney, for the people.

*Alvin C. Sallen,* for defendant.

Before: McDONALD, P.J., and MICHAEL J. KELLY and W. F. LaVOY,* JJ.

MICHAEL J. KELLY, J. Defendant was charged with possession with intent to deliver less than fifty grams of a mixture containing cocaine. MCL 333.7401(2)(a)(iv); MSA 14.15(7401)(2)(a)(iv). Defendant appealed the denial by the trial court of her motion to quash the information and suppress the evidence seized. This Court denied leave to appeal. However, in lieu of granting leave to appeal, the Supreme Court remanded to this Court for consideration as on leave granted. *People v Locklear,* 429 Mich 866; 413 NW2d 428 (1987).

Evidence taken at defendant's preliminary examination revealed that Lieutenant Jack Baird went to Judge Don Binkowski's residence at approximately 11:15 P.M. on January 17, 1984, to obtain a search warrant for 22620 Oak Lane Road in Warren. Baird testified that he swore to the facts in the affidavit and was told by the judge to sign the warrant. Baird stated that he then inadvertently signed on the signature line designated for the issuing magistrate.

Subsequently, at approximately 11:50 P.M. on the same date the home at 22620 Oak Lane Road was entered and searched. The search was nonconsensual. The items seized formed the basis for the charge against defendant. At the preliminary ex-

* Circuit judge, sitting on the Court of Appeals by assignment.

amination, the examining magistrate was Judge Binkowski. The judge noted that he did sign the jurat and that he did so with the intention of authorizing the search warrant. He did not know why his signature did not appear on the warrant. Thereafter, on the continued examination date, Judge Binkowski saw the issue as one of form over substance and ruled that the search warrant was valid. Defendant was bound over to circuit court.

At the trial court level defendant moved to quash the information and suppress the evidence on the ground that the search warrant was not signed or issued by a neutral and detached magistrate—but rather by the officer in charge of the case, Lieutenant Baird. The trial court denied the motion and that decision forms the sole basis of this appeal.

MCL 780.651; MSA 28.1259(1) provides:

When an affidavit is made on oath to a magistrate authorized to issue warrants in criminal cases and when the affidavit establishes the grounds for issuing a warrant pursuant to this act, the magistrate, if he is satisfied that there is reasonable or probable cause therefor, shall issue a warrant to search the house, building or other location or place where the property or thing which is to be searched for and seized is situated.

In *People v Hentkowski,* 154 Mich App 171; 397 NW2d 255 (1986), a nearly identical fact situation was presented. Defendant there faced possession of controlled substance charges based on evidence seized pursuant to a warrant. Defendant moved to suppress this evidence because the search warrant was not signed by a magistrate. As here, the magistrate in *People v Hentkowski* failed to sign the warrant, although he did sign the line on the affidavit (the jurat), acknowledging that the affida-

vit was subscribed and sworn before him. In *People v Hentkowski,* for purposes of analysis, the panel presumed there was probable cause to search. However, the Court noted that both the Fourth Amendment to the United States Constitution and the Michigan Constitution, Const 1963, art 1, § 11, contained warrant requirements that must be met for a valid search. Relying on these constitutional provisions the Court concluded that a search or seizure undertaken without a warrant, where none of the exceptions to the warrant requirement apply, or pursuant to an invalid warrant was "unreasonable per se." *People v Hentkowski, supra* at 176.

Holding that in order for the police to obtain a valid warrant the constitutional requirement that the warrant must "issue" had to be met, the *Hentkowski* Court then concluded "that a magistrate 'issues' a 'warrant' only when he signs an appropriate document and turns it over to the proper person." *Id.* at 177.

We believe that this reasoning provides a sound basis for reversing the denial of defendant's motion to quash the information and suppress the evidence seized. The warrant in question here could not "issue" without the signature of a neutral detached magistrate.

We also find that the facts and issues presented here are distinguishable from *People v Mitchell,* 428 Mich 364; 408 NW2d 798 (1987). The critical fact presented in *Mitchell* was that the affiant had failed to sign the affidavit accompanying the search warrant. The Supreme Court held that this created a presumption of invalidity that "may be rebutted by a showing that the facts in the affidavit were presented under oath to the magistrate who authorized the issuance of the search warrant." *Id.* at 366.

Here we are faced with a more fundamental problem. The officer in charge of the investigation was the one who signed the line meant for the magistrate issuing the warrant. For that reason, we hold that, consistent with both United States and Michigan constitutional authority, for a valid warrant to issue it must be properly signed by a neutral and detached magistrate. *Shadwick v City of Tampa*, 407 US 345, 350; 92 S Ct 2119; 32 L Ed 2d 783 (1972), *People v Hentkowski, supra.* That was not the case here and the warrant used to seize the items that supported the charges against defendant was invalid.

Reversed and remanded.

McDONALD, P.J., concurred.

W. F. LaVOY, J. *(dissenting).* The majority opinion relies extensively upon *People v Hentkowski,* 154 Mich App 171; 397 NW2d 255 (1986). The *Hentkowski* analysis correctly held that a warrant must "issue," but further determined that for a warrant to issue the signature must appear on the appropriate document. In that case, the magistrate signed the affidavit but "[t]he magistrate, however, inadvertently failed to sign the warrant." *Id.* at 175. The *Hentkowski* Court correctly analyzed the issue in terms of the Fourth Amendment to the United States Constitution, and Const 1963, art 1, § 11. The Court further stated that placement of the magistrate's signature on a document would distinguish an actual warrant from other proposed documents drafted by law enforcement agencies which never actually become enforceable warrants. There is a second constitutional requirement that the warrant "issue." Issuance cannot occur until the magistrate signs the warrant. Public policy also supports the conclusion that a signa-

ture is required; the signature requirement serves a cautionary function.

In the case at bar, the magistrate was also the presiding judge at the preliminary examination and signed the warrant "nunc pro tunc," indicating that, while he could not understand why his signature was not on the warrant, he could specifically recall signing it.

In these days of facsimile machines, carbonized forms and no-carbon-required paper, a turned sheet of no-carbon paper or an improperly set piece of carbon can cause a signature not to appear on all sheets as intended. When a magistrate acknowledges the officer's signature on the affidavit, and by that same signature intends to sign the search warrant, but because of some defect in the carbonization process or other defects the signature does not occur, we have a classic case of exaltation of form over substance. To automatically invalidate the warrant will not deter the police from improper searches or seizures. Validating such a warrant will not impair a defendant's right to issuance by an impartial magistrate. Where an impartial magistrate examines the affidavit, approves it and intends to issue the warrant and, in fact, signs the warrant, but his signature does not appear on the warrant due to a technical problem, I would hold the warrant valid.

In *People v Goff*, 401 Mich 412; 258 NW2d 57 (1977), the Supreme Court held that an unsigned affidavit on a search warrant will be deemed invalid. However, the absence of a signature did not necessarily invalidate the search warrant. Because the record was ambiguous, the Court directed that further proceedings should be taken to ascertain whether the affidavit was made on oath, in which case the substance was met, although the form was deficient. In the more recent *People v Mitch-*

*ell,* 428 Mich 364; 408 NW2d 798 (1987), the Court
stated that a search warrant is not necessarily
invalid for want of the affiant's signature. Al-
though presumed to be invalid, that presumption
might be rebutted by showing that the facts in the
affidavit were presented under oath to the magis-
trate who authorized the issuance of the warrant.
Even though the magistrate had no independent
recollection of authorizing that specific search war-
rant, it was his "habit" (from which he never
deviated) to have the affiant attest to the facts
supporting the search warrant prior to authorizing
it. On that testimony alone, the *Mitchell* Court
chose to affirm the trial court's finding that the
affidavit was made on oath, although unsigned.
Based on the Supreme Court reliance on "habit"
testimony, certainly the specific statements here of
the magistrate-preliminary examination judge that
he specifically recalled the event and recalled
signing the search warrant should prevail.

In *United States v Turner,* 558 F2d 46 (CA 2,
1977), the court upheld a technically defective
warrant where the search warrant application was
made over the telephone. Upon finding probable
cause, the magistrate had authorized one of the
officers to sign his name on the warrant in order
to issue it. The defendant argued that the warrant
was not issued by a neutral and detached magis-
trate. However, the court held that the Fourth
Amendment did not prevent the magistrate from
delegating a purely ministerial task to the officer.
Nor did the fact that a telephone was used invali-
date the procedure.

In *United States v Juarez,* 549 F2d 1113 (CA 7,
1977), a case involving a signature stamp used in
lieu of a personal signature, the court stated:

We do not approve the use of a signature stamp

by a magistrate. Its use creates the appearance
that the user lacks the sensitivity a federal judi-
cial officer should have to the important values
which the warrant is designed to protect. Never-
theless, in this case the magistrate testified un-
equivocally that he remembered placing the signa-
ture stamp on the warrant, and the District Court
credited this testimony. We cannot say that it was
clearly erroneous for the court to have done so.
[549 F2d 1114-1115.]

In the case at bar, the substantive requirements
have been fulfilled to issue a warrant. Although
the act of signing the warrant indicates an objec-
tive manifestation of the magistrate's intention,
the lack of a signature alone should not be disposi-
tive for invalidating a warrant.

I would remand this case for an evidentiary
hearing to determine whether Judge Binkowski
intended to issue the search warrant after finding
that there was probable cause. Upon a finding of
such intent, I would affirm the denial of the mo-
tion to quash.