*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAMES THOMAS BANKS,

Defendant-Appellant.

UNPUBLISHED
December 16, 2024
11:21 AM

No. 363225
Dickinson Circuit Court
LC No. 2022-006095-FC

Before: RIORDAN, P.J., and BOONSTRA and YATES, JJ.

PER CURIAM.

Defendant appeals by right his conviction of breaking and entering with intent to commit a larceny, MCL 750.110. The trial court sentenced defendant as a fourth habitual offender, MCL 769.12, to a prison term of 6 to 25 years. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On February 12, 2022, the complainant, Kent Kringlund, returned to his residence after being away for three hours, and noticed tire tracks in the snow on a driveway leading to one of his outbuildings. He followed the path to find a floormat that appeared to have been used to aid in dislodging a vehicle from a snow embankment. Kringlund observed that the door to his outbuilding had been broken open and several items near the entrance were missing, including a generator, two battery chargers, keys for a motorcycle, a digital power inverter, a portable light, overhead LED lights, and extension cords. Kringlund viewed footage from the game camera that monitored his driveway, and saw a vehicle entering at 12:59 p.m. and leaving at 2:00 p.m. Kringlund drove to the nearest town and stopped at a pawn shop to look for his missing property. While doing so, he observed a vehicle parked at a motel, which was similar to the one depicted in the camera footage. Kringlund returned home and contacted the police.

A Dickinson County Sheriff's deputy spoke to the motel's owner, Bhagirath Bhatt, discovered defendant's identity as the driver of the vehicle Kringlund had spotted, and established that defendant had rented a room but was not present at that time. A Michigan State Police trooper walked by the room and, through a window, observed property matching the description of property Kringlund had identified as missing. At around the same time, a sheriff's deputy stopped

defendant's vehicle and arrested defendant for motor-vehicle violations. The State Police subsequently secured and executed a search warrant for defendant's motel room, where they located several items that Kringlund had reported missing. A subsequent warrant-based search of the car defendant was driving, which belonged to an acquaintance, revealed several more of Kringlund's items.[1]

Before trial, defendant filed a motion *in propria persona* to suppress the evidence gathered pursuant to search warrants on the ground that the magistrate was the wife of a sheriff's deputy investigating the case. The trial court denied defendant's motion, finding that the deputy was not an integral part of the investigation.

Following his conviction and sentence, defendant moved the trial court for a new trial on the basis of the same arguments presented in this appeal—that the search of his motel room was unconstitutional, that his trial counsel provided ineffective assistance both by failing to attempt to suppress the evidence gathered in the search and by advising defendant to not testify, that the trial judge was not neutral and detached, and that Offense Variable 19 (OV 19) was errantly scored. The trial court denied the motion. This appeal followed.

## II. SEARCH

Defendant argues that the trial court erred by admitting evidence obtained during the search of his motel room, because the search violated his Fourth Amendment rights. We disagree. This Court reviews for an abuse of discretion a trial court's decision on a motion for a new trial. *People v Lonsby*, 268 Mich App 375, 382; 707 NW2d 610 (2005). We review for clear error the trial court's factual findings; a factual finding is clearly erroneous if it leaves this Court with a firm and definite conviction that a mistake was made. *Id*. This Court reviews de novo a trial court's ruling on a suppression motion. *People v Gingrich*, 307 Mich App 656, 661; 862 NW2d 432 (2014).

In a criminal case, we review unpreserved claims for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

## A. SEARCH TIMING

Defendant argues that the police searched the motel room he was staying in before they had obtained a search warrant, rendering the search warrantless and unconstitutional. The record does not provide factual support for defendant's claim.

The Fourth Amendment of the United States Constitution prohibits unreasonable searches and seizures. US Const, Am IV. The Michigan constitutional provision, Const 1963, art 1, § 11, is substantially the same. The exclusionary rule, with several exceptions, bars the introduction into evidence of materials seized, and observations made, during an unconstitutional search. *People v Hawkins*, 468 Mich 488, 498-499; 668 NW2d 602 (2003). Evidence subsequently obtained as the result of an unlawful search is subject to exclusion as the " 'fruit of the poisonous

---

[1] The car was also missing the front, driver's-side floormat, and its remaining floormats matched the color, material, and style of the floormat found on Kringlund's property.

tree.' " *People v Reese*, 281 Mich App 290, 295-296; 761 NW2d 405 (2008), quoting *Wong Sun v United States*, 371 US 471, 487-488; 83 S Ct 407; 9 L Ed 2d 441 (1963). A search warrant may be issued only upon a showing of probable cause. US Const, Am IV; Const 1963, art 1, § 11; MCL 780.651(1). Probable cause must exist at the time the warrant is issued. *People v Russo*, 439 Mich 584, 606-607; 487 NW2d 698 (1992). The occupant of a motel room has a reasonable expectation of privacy and is protected against unreasonable searches. *People v Davis*, 442 Mich 1, 10; 497 NW2d 910 (1993).

At trial, Bhatt testified that he did not open the door to defendant's room until the police returned with a warrant. State Police Trooper Jacob Mundy testified that he had spoken with Bhatt, and that he peered into defendant's room through an opening in the curtains, before waiting with another trooper and watching defendant's motel room until a search warrant was obtained. Trooper Collin D'Antonio testified that he obtained a search warrant for defendant's motel room, and met with Bhatt, who provided a key so that the warrant could be executed.

When asked how long after defendant's arrest (which occurred at 7:20 p.m.) the search took place, Trooper D'Antonio initially responded that it was "probably three to four hours, but that's approximate," before clarifying that he "believe[d] it was actually . . . late that night into the morning." The magistrate signed the search warrant for defendant's motel room at 1:44 a.m.

The trial testimony from police and Bhatt was consistent and unequivocal that defendant's motel room was searched *after* the search warrant was obtained. Although Trooper D'Antonio's testimony was not precise about the timing of the warrant, he and the other witnesses were not asked to be exact when discussing the timing of the warrant's issuance and motel room search.

Notwithstanding this trial testimony, defendant argues that Kringlund's preliminary examination testimony indicates that the motel room was searched before the warrant was issued. Kringlund testified that "the officers called me when they recovered those keys" that were found in defendant's motel room, and that he confirmed that the keys were to his motorcycle when they were returned to him. Kringlund testified that he compiled a list of items that were missing from his property "[b]etween the time I contacted law enforcement and the time that they searched the room at the [motel]. Somewhere in that three-hour time frame."

Defendant argues that Kringlund's preliminary-examination testimony suggests that the police actually searched defendant's room well before the search warrant was issued, because Kringlund thought the police searched the room within three hours of his initial contact with police. However, the record is clear that Kringlund was not present when the officers obtained the warrant and searched defendant's motel room. Kringlund's statement was a response to a question concerning when Kringlund had compiled his list of missing items—he was not asked to state when the search took place. Kringlund's statement regarding the "three-hour time frame," even if it is interpreted as definitively stating his understanding that the police searched defendant's room in the early evening rather than early the next morning, is simply not credible in the face of the amount of contradictory testimony from persons with actual knowledge.

Additionally, Trooper Mundy testified at the preliminary examination hearing that the warrant was executed after midnight. Thus, there was evidence at the preliminary examination hearing indicating that the police obtained a search warrant before entering defendant's motel

room. Kringlund's statement did not contradict Mundy's clear testimony regarding the timing of the search, or otherwise establish a timeline of events. It is not clear that Kringlund was testifying about when the search was conducted, and there was no evidence that he had any personal knowledge regarding issuance or execution of the warrant. The trial court did not err by admitting evidence obtained from the search of defendant's motel room, and accordingly did not err by denying defendant's motion for a new trial. *Lonsby*, 268 Mich App at 382.[2]

## B. MAGISTRATE NEUTRALITY

Defendant also argues that the magistrate who issued the search warrant was not neutral and detached. We disagree.

A search warrant is invalid unless "properly signed by a neutral and detached magistrate." *People v Locklear*, 177 Mich App 331, 335; 441 NW2d 73 (1989). A magistrate qualified to issue warrants must be "be neutral and detached," and "capable of determining whether or not probable cause exists." *People v Lowenstein*, 118 Mich App 475, 481; 325 NW2d 462 (1982). In order to disqualify a magistrate, a defendant must show bias or prejudice in fact. *Id.*; *People v Karmey*, 86 Mich App 626, 635-636, 273 NW2d 503 (1978).

In this case, at the time of the issuance of the search warrant, Magistrate Michelle Polzien was married to Deputy Brian Polzien, who assisted the State Police in monitoring defendant's motel room and securing defendant's vehicle after he was stopped and arrested by Dickinson County Sheriff's Deputy Randall Howe. Deputy Polzien's role was mentioned in the warrant affidavit. Defendant does not assert that Magistrate Polzien was actually biased or prejudiced, but nonetheless argues that her relationship with an officer who assisted in the investigation at least raised doubts about her impartiality. "Certain situations have been identified as requiring dismissal when the appearance of impropriety is too great even though no actual prejudice is shown." *Lowenstein*, 118 Mich App at 483. A disqualifying connection between the magistrate and law enforcement is one creating an "allegiance to law enforcement" that would prevent the magistrate's impartiality. *Id.* The probable cause determination must be made by a person whose loyalty is to the judiciary alone, *unfettered by professional commitment*, and therefore loyalty, to the law

---

[2] We note that defendant's appellate counsel conducted two investigations into this issue, including two interviews of Bhatt and Kringlund, and presented the results of these investigations to the trial court in defendant's motion for a new trial. Neither investigation resulted in evidence lending support to defendant's argument. Although Kringlund stated that he spoke with police via telephone at around 6 or 7 p.m. on the day of the breaking and entering and they informed him that they had recovered some of his property, he was not told that the police had searched defendant's motel room and seized the property. It is undisputed that officers looked in defendant's motel room window and observed some of Kringlund's property around that time. Again, Kringlund had no personal knowledge of the search. Minor inconsistencies or imprecise language in statements made after the fact are insufficient grounds for reversal of the trial court in light of the overwhelming amount of trial evidence indicating that the police obtained a warrant before searching the motel room.

enforcement arm of the executive branch." *People v Payne*, 424 Mich 475, 483; 381 NW2d 391 (1985) (emphasis added).

In this case, the magistrate did not have an official relationship with law enforcement, but rather a personal relationship with a deputy who was only tangentially involved in the case. Magistrates are not forbidden from dating or marrying members of law enforcement. Further, Deputy Polzien's role in the case was limited to assisting the State Police at their request. There was no evidence that Deputy Polzien's role continued beyond assisting the State Police by monitoring defendant's motel room and securing his automobile. There was no allegation that Magistrate Polzien's judicial neutrality was compromised by a professional association with the prosecution. The mere fact that the magistrate was married to a police officer with some limited involvement in the case "does not mean that the magistrate has injected [her]self into the investigatory process." *People v Tejeda*, 192 Mich App 635, 638; 481 NW2d 814 (1992). We conclude that Magistrate Polzien's personal relationship, which was disclosed, did not give rise to an appearance of impropriety or otherwise prejudice defendant. For these reasons, the trial court did not err by denying defendant's suppression motion, *Gingrich*, 307 Mich App at 661, or abuse its discretion by denying defendant's motion for a new trial, *Lonsby*, 268 Mich App at 382, regarding this issue.

## C. CUSTODIAL INTERROGATION

Defendant also argues that the police violated his Fifth Amendment rights by including in the search-warrant affidavit a statement he made while in police custody without being advised of his *Miranda*[3] rights. We disagree.

"No person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law." Const 1963, art 1, § 17; see also US Const, Am IV. Michigan's constitutional provision against self-incrimination is applied consistently with and "no more liberally than the Fifth Amendment of the United States Constitution." *People v Geno*, 261 Mich App 624, 628; 683 NW2d 687 (2004). "The constitutional privilege against self-incrimination protects a defendant from being compelled to testify against himself or from being compelled to provide the state with evidence of a testimonial or communicative nature." *People v Burhans*, 166 Mich App 758, 761-762; 421 NW2d 285 (1988).

A person must be given a series of *Miranda* warnings before being subjected to "custodial interrogation" in order to protect the constitutional privilege against self-incrimination. *People v Tanner*, 496 Mich 199, 207-208; 853 NW2d 653 (2014). Warnings required under *Miranda* must be given when a person is in custody or otherwise deprived of freedom of action in any significant manner." *People v Mayes (After Remand)*, 202 Mich App 181, 190; 508 NW2d 161 (1993), citing *People v Hill*, 429 Mich 382, 384; 415 NW2d 193 (1987). The totality of the circumstances is examined to determine whether the defendant was in custody when questioned. *Mayes*, 202 Mich App at 189. The salient question is whether the accused reasonably could have believed that he was not free to leave. *Id*. Whether a person is in custody is determined on the basis of how a

---

[3] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

reasonable person in the accused's situation "would perceive his or her circumstances and whether the reasonable person would believe that he or she was free to leave." *People v Roberts*, 292 Mich App 492, 504-505; 808 NW2d 290 (2011).

A statement obtained from a defendant during a custodial interrogation is admissible only if the defendant "voluntarily, knowingly, and intelligently" waived his Fifth Amendment rights. *Miranda*, 384 US at 444; *People v Daoud*, 462 Mich 621, 632-639; 614 NW2d 152 (2000). A statement given by a defendant in violation of his right to remain silent may not be included in an affidavit for a warrant. *People v Melotik*, 221 Mich App 190, 198-199; 561 NW2d 453 (1997).

In this case, whether defendant's statements could properly be used against him in the affidavit depends on whether they were made during a custodial interrogation. Defendant argues that he was obviously in a custodial interrogation because he was under arrest in police custody and, therefore, not free to leave. However, we note that, in addition to the search-warrant affidavit's recitation that defendant was told he was free to leave and not in custody, the police report stated that deputies had arrested defendant at a traffic stop for "operating without securities," and that he had already been fingerprinted and released with an appearance citation, when Troopers D'Antonio and Varney asked defendant if he was willing to answer questions. Defendant then told the officers that he was travelling through the area and did not have a motel room. When officers informed defendant that they knew he *did* have a motel room rented in his name, defendant terminated the interview. Accordingly, having been told that he was not under arrest and free to leave, and in fact being able to terminate the interview and leave when he desired, defendant could not reasonably have been under the impression that he was being subjected to custodial interrogation. *Roberts*, 292 Mich at 504-505. The trial court did not abuse its discretion by denying defendant's motion for a new trial with regard to this issue. *Lonsby*, 268 Mich App at 382.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that his trial counsel provided ineffective assistance by failing to seek to suppress evidence from the search of defendant's motel room, and by advising defendant not to testify. We disagree. The constitutional question whether a criminal defense attorney's performance deprived a defendant of his constitutional right to the ineffective assistance of counsel is reviewed de novo. *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). We review for clear error the trial court's findings of fact. *Id*.

A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963 art 1, § 20. This "right to counsel encompasses the right to the effective assistance of counsel." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007) (quotation marks omitted). In order to prevail on a claim of ineffective assistance, a defendant must show (1) "that counsel's performance was deficient" and (2) "that counsel's deficient performance prejudiced the defense." *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007) (quotation marks and citation omitted). The right to effective assistance of counsel is substantive and focuses on "the actual assistance received." *People v Pubrat*, 451 Mich 589, 596; 548 NW2d 595 (1996). A defense attorney's performance is deficient if "it fell below an objective standard of professional reasonableness." *Jordan*, 275 Mich App at 667. That performance will be deemed to have prejudiced the defense if it is reasonably probable that, but

for counsel's error, "the result of the proceeding would have been different." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). The "[e]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001).

## A. FAILURE TO FILE MOTION TO SUPPRESS

Defendant argues that his trial counsel's failure to seek to suppress evidence from the search of defendant's motel room constituted deficient performance. However, the trial court had already denied defendant's *in pro per* motion to suppress based on the magistrate's relationship to an investigating deputy. Additionally, as discussed, we find no merit to defendant's arguments concerning the timing of the search or defendant's statements contained in the warrant affidavit. Defense counsel is not ineffective for failing to advance a meritless argument or raise a futile objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## B. ADVICE NOT TO TESTIFY

Defendant also argues that his trial counsel provided ineffective assistance by advising him to not testify. Defendant asserts that he informed his trial counsel that he wanted to tell the jury his side of the story, without elaboration, but that trial counsel responded that the defense they had presented held promise, and that she had lost cases "every time [she] put a client on the stand," so he changed his mind. Defendant argues that he would have testified that he had borrowed the car he was driving from his friend to go to Iron Mountain to purchase drugs, that there were items in the back seat that his friend had asked him to sell for drugs, and that he had given his friend a key to his motel room so that she could drop off additional items to sell.

Even though trial counsel has a duty to advise a defendant regarding the existence of, and the consequences of exercising, his right to testify, "the ultimate decision whether to testify at trial remains with the defendant." *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). Defense counsel informed the trial court on the record that she had informed defendant of his right to testify, and had advised him to remain silent, and the trial court reiterated for defendant that he had those rights, and stated that the court would instruct the jury that defendant's silence must not be used against him. Defendant personally addressed the court, and confirmed that trial counsel had informed him of his rights, that the two had discussed whether defendant should testify, and that defendant was voluntarily electing not to testify. The record plainly indicates that trial counsel fulfilled her duty to educate defendant regarding his right to testify, and defendant unequivocally chose not to do so. See *People v Plummer*, 229 Mich App 293, 308; 581 NW2d 753 (1998) (concluding that the defendant could not establish that his trial counsel provided deficient performance when the defendant had informed the trial court on the record that he was informed of his right to testify).

Regarding the quality of the advice trial counsel provided, defendant has not shown that it fell below an objective standard of reasonableness. Even with the benefit of hindsight, it is not possible to know whether defendant's proposed testimony, particularly as subjected to cross-examination, would have diminished or improved his chances of a more favorable result, and defendant does not assert that he was in any way misinformed, or explain how the advice of his trial counsel was objectively erroneous. Had defendant testified, he would have been subjected to

cross-examination with regard to the incident, as well as to impeachment with defendant's previous convictions of crimes involving dishonesty under MRE 609. "A failed strategy does not constitute deficient performance." *People v Petri*, 279 Mich App 407, 412-413; 760 NW2d 882, 886 (2008). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999).

There is no evidence that defendant's trial counsel failed to properly inform defendant of the repercussions regarding his decision whether to exercise his right to testify, or that her advice was not sound at the time defendant made his decision. Defendant has not established that his counsel was ineffective. *Taylor*, 275 Mich App at 186.

## IV. JUDICIAL BIAS

Defendant also argues that the judge who presided over his trial and sentencing, the Honorable Christopher S. Ninomiya, was biased against him and denied him a fair trial. We disagree. Whether judicial misconduct denied a defendant a fair trial is a question of constitutional law that we generally review de novo. *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015). However, we review unpreserved claims for plain error affecting substantial rights. *Carines*, 460 Mich at 763. In this case, defendant never raised the issue of bias, either before the trial court directly or via a motion to disqualify the trial judge, see *Kloian v Schwartz*, 272 Mich App 232, 244; 725 NW2d 671 (2006). This issue is therefore unpreserved.

A criminal defendant's right to due process of law includes the right to appear before "a neutral and detached magistrate." *People v Loew*, 340 Mich App 100, 110; 985 NW2d 255 (2022). A "fair trial in a fair tribunal is a basic requirement of due process," and the "Due Process Clause entitles a person to an impartial and disinterested tribunal." *People v Johnson*, 336 Mich App 688, 693-694; 971 NW2d 692 (2021) (quotation marks and citations omitted). The standard of impartiality is that "a judge should act neither as an advocate nor an adversary in any criminal proceeding." *Loew*, 340 Mich App at 111. When judicial misconduct denies the defendant a fair trial, "a structural error has occurred and automatic reversal is required." *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015).

In this case, after defendant was convicted but before sentencing, defendant filed a complaint with the Attorney Grievance Commission (AGC) regarding his representation in this case by a previous attorney, Henry McRoberts, who was succeeded by counsel of record, Abbey Anderson. McRoberts represented defendant from his arraignment until May 5, 2022, when the trial court granted McRoberts' motion to withdraw. Anderson was appointed standby counsel until defendant agreed to her full representation at trial, which occurred in mid-August 2022. Judge Ninomiya wrote a letter to the AGC in support of McRoberts, stating that Judge Ninomiya believed that McRoberts had "zealously and competently" represented defendant until released from his obligation.

Defendant argues that Judge Ninomiya's letter demonstrated that he was not impartial. We disagree. Grounds for disqualification of a trial judge include when "[t]he judge is biased or prejudiced for or against a party or attorney." MCR 2.003(C)(1)(a). However, defendant does not identify any actions Judge Ninomiya took at trial that indicated bias or that he was otherwise not

impartial. Defendant asserts that the letter indicates bias, but the letter was sent after defendant's trial, and McRoberts was not defendant's trial counsel.

MCR 2.003(C)(1)(b) further provides that a judge may be disqualified in the following circumstance:

> The judge, based on objective and reasonable perceptions, has either (i) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v Massey*, [556 US 868]; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), or (ii) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct.

Defendant argues that Judge Ninomiya's "ex parte communications with the AGC just before the trial began represented at least the appearance of impropriety," because it expressed that there were "no merits in defendant's complaint." However, the letter is dated August 30, 2022, after defendant's August 18, 2022 conviction but before sentencing. Moreover, the letter does not state that there was no merit to defendant's complaint, but merely opined that McRoberts' brief representation of defendant was competent. Defendant has not explained how the trial judge's opinion, expressed after trial, that defendant was competently represented in pretrial matters, would raise the appearance of impropriety or otherwise indicated that the trial judge was biased against him. "[A] trial judge is presumed to be impartial, and the party asserting partiality has the heavy burden of overcoming that presumption." *People v Wade*, 283 Mich App 462, 470; 771 NW2d 447 (2009). Defendant has not done so here.

## V. OFFENSE VARIABLE 19

Defendant argues that the trial court erroneously assessed 25 points for OV 19. We disagree. This Court reviews for clear error the trial court's factual determinations at sentencing. See *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. See also *People v Calloway*, 500 Mich 180, 184; 895 NW2d 165 (2017).

OV 19 concerns conduct that is a threat to the security of a penal institution or court, or interference with administration of justice or rendering of emergency service, and requires the trial court to assess 25 points when it finds by a preponderance of the evidence that "[t]he offender by his or her conduct threatened the security of a penal institution or court." MCL 777.49(a); *People v Dixon*, 509 Mich 170, 177; 983 NW2d 385 (2022). "To satisfy this standard, a court must find (1) that the defendant engaged in some conduct and (2) that conduct threatened the security of the prison." *Dixon*, 509 Mich at 177. In assessing points under OV 19, a court may consider the defendant's conduct after the completion of the sentencing offense. *People v Smith*, 488 Mich 193, 200; 793 NW2d 666 (2010).

The record in this case shows that on April 5, 2022, defendant, who had been incarcerated since February 13, 2022 for the charges underlying this appeal, locked himself in his jail cell and told staff that he did so because "he felt like he might end up hurting someone." When a guard left the cell to check into letting defendant out, defendant "aggressive[ly]" told him, "If you're not

back in 10 minutes I will kick this door open," and said insulting things to the officer, to which the officer responded that defendant would remain in "lock down" status for the rest of the week. According to defendant's PSIR,

> [defendant] then kicked the cell door three to four times, causing it to fly open. He exited the cell and began to walk towards [a corrections officer]. [The corrections officer] immediately instructed [defendant] to return to his cell, to which [he] refused. [Defendant] then became very insolent, calling [the corrections officer] a "[various expletives]." He also demanded that a Sergeant come to the block. [The corrections officer] unholstered his taser and again ordered [defendant] to return to his cell. [Defendant] complied and the cell door was secured.

The facility staff discovered that the locking mechanism on the door frame was damaged, and it cost $1,985 to replace it.

Defendant admits that he engaged in the conduct described above, but argues that his conduct did not threaten the security of the jail because it was the result of a mental health crisis brought on by not having his medication in the weeks that he had been incarcerated. However, defendant's conduct in damaging his cell door, refusing to cooperate with an officer's orders, and threatening to harm other inmates or jail officers, which required an officer to threaten him with a taser, clearly threatened the security of a penal institution, regardless of the cause of that conduct.

Defendant also argues that the trial court erred by considering his conduct because it occurred over seven weeks after defendant's arrest, but before his trial, and was unrelated to the sentencing offense. We disagree. Defendant was in custody awaiting trial for the underlying sentencing offense; in other words, defendant was "in the 'administration of justice' phase of the sentencing offense when his conduct threatened the security of a penal institution." *People v Carpenter*, 322 Mich App 523, 530; 912 NW2d 579 (2018). Further, "the sentencing offense need not, itself, involve a threat to the security of a penal institution or court." *Id*. Defendant's conduct was therefore properly considered by the trial court, although it occurred several weeks after his arrest and was dissimilar to the underlying offense. *Id*. Moreover, to the extent that defendant argues that the trial court erred by considering his conduct because it had resulted in a separate conviction,[4] he has provided no authority for that proposition. We note that, in the context of scoring OV 12, the Legislature has explicitly stated that only conduct that "has not and will not result in a separate conviction" may be scored. MCL 777.42(2)(a). Yet no such limitation is provided for in the scoring of OV 19. Absent evidence to the contrary, the Legislature's omission

---

[4] According to the PSIR, on September 2, 2022, defendant pleaded no contest to malicious destruction of a building and disturbing the peace.

-10-

of this language should be considered intentional, and provisions not included by the Legislature should not be read into a statute by the courts. *People v Peltola*, 489 Mich 174, 185; 803 NW2d 140 (2011); *People v Underwood*, 278 Mich App 334, 338; 750 NW2d 612 (2008).

Affirmed.

/s/ Michael J. Riordan
/s/ Mark T. Boonstra
/s/ Christopher P. Yates